1 | TIMOTHY L. NEUFELD, State Bar No. 66980
  tneufeld@nmgmlaw.com
2 | GAELLE H. GRALNEK, State Bar No. 143846
  ggralnek@nmgmlaw.com
3 | ERIN E. BRADY, State Bar No. 254164
  ebrady@nmgmlaw.com
4 | **NEUFELD, MARKS, GRALNEK & MAKER**
  **A Professional Corporation**
5 | 360 East Second Street, Suite 703
  Los Angeles, California 90012
6 | Telephone: (213) 625-2625
  Facsimile: (213) 625-2650
7 |
  Attorneys for Defendant Richard Meruelo
8 |
9 |

*NEUFELD, MARKS, GRALNEK & MAKER*
*A PROFESSIONAL CORPORATION*
360 East Second Street • Suite 703 • Los Angeles, California 90012
Telephone: (213) 625-2625 • Facsimile: (213) 625-2650

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WELLS FARGO BANK. N.A. SUCCESSOR BY CONSOLIDATION TO WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION AS TRUSTEE FOR THE REGISTERED CERTIFICATEHOLDERS OF GMAC COMMERCIAL MORTGAGE SECURITIES, INC., MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2002-C1,<br><br>        Plaintiff,<br><br>    vs.<br><br>RICHARD MERUELO, an individual,<br><br>        Defendant. | CASE NO. CV10- 315 CAS (AJWx)<br><br>**SUPPLEMENTAL DECLARATIONS OF GAELLE H. GRALNEK AND JOHN N. TEDFORD, IV IN SUPPORT OF MOTION TO STAY PROCEEDINGS**<br><br>Date:          July 12, 2010<br>Time:         10:00 a.m.<br>Courtroom:  5<br><br>Complaint Filed:   January 15, 2010<br><br>*Hon. Christina A. Snyder* |

149563-1

## SUPPLEMENTAL DECLARATION OF GAELLE H. GRALNEK

I, Gaelle H. Gralnek, declare as follows:

1.    I am a partner with Neufeld, Marks, Gralnek & Maker, and am duly licensed to practice before this court. I am counsel of record for defendant Richard Meruelo in this matter. I have personal knowledge of the facts set forth herein, except those stated on information and belief, and could and would testify truthfully to those facts if called and sworn as a witness.

2.    I make this Supplemental Declaration to address certain statements made by Plaintiff and its counsel regarding three pending lawsuits against Mr. Meruelo brought by East West Bank ("EWB").

3.    The first lawsuit is captioned *East West Bank v. Meruelo Properties, Inc., et al.,* Los Angeles Superior Court Case No. BC422051. (Mr. Geher's declaration incorrectly describes it as *"East West Bank v. Richard Meruelo, et al."*) I am counsel of record for all defendants in that action, which involves a personal line of credit EWB extended to Mr. Meruelo in 2007 which was guarantied by a family Trust and partially secured by a deed of trust on real property. None of the issues in that case have anything to do with the pending Bankruptcy proceedings involving Santa Fe and its 53 affiliated Debtor entities, and no defendant's alleged liability in that case depends on any determination by the Bankruptcy Court.

4.    The second lawsuit is captioned *East West Bank v. Richard Meruelo, et al.,* Los Angeles Superior Court Case No. BC424178. I am counsel of record for all defendants in that action, which involves three overdrawn checking accounts EWB, one owned by Mr. Meruelo, one owned by a family Trust and one owned by a limited liability company. None of the issues in that case have anything to do with the pending Bankruptcy proceedings involving Santa Fe and its 53 affiliated Debtor entities, and no defendant's alleged liability in that case depends on any determination by the Bankruptcy Court.

5.    The third lawsuit is captioned *East West Bank v. Richard Meruelo, et*

NEUFELD, MARKS, GRALNEK & MAKER
A PROFESSIONAL CORPORATION
360 East Second Street • Suite 703 • Los Angeles, California 90012
Telephone: (213) 625-2625 • Facsimile: (213) 625-2650

1  *al.,* United States District Court Case No. CV 10-3245 ODW(Ex). I intend to

2  appear as counsel of record for all defendants in that action, but no appearance has

3  yet been required as Mr. Meruelo was served on June 15, 2010 and his response to

4  the Complaint is not due until July 6, 2010. That action involves Mr. Meruelo's

5  personal guaranty of a loan United Commercial Bank made to Meruelo Wall Street,

6  LLC, which is one of the 54 Debtor entities in the jointly-administered Bankruptcy

7  proceedings involving Santa Fe and other affiliated Debtors.

8       I declare under penalty of perjury under the laws of the United States of

9  America that the foregoing is true and correct. Executed this 28th day of June, 2010

10  at Los Angeles, California.

11

12

13  _____
    Gaelle H. Gralnek

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NEUFELD, MARKS, GRALNEK & MAKER
A PROFESSIONAL CORPORATION
360 East Second Street • Suite 703 • Los Angeles, California 90012
Telephone: (213) 625-2625 • Facsimile: (213) 625-2650

## SUPPLEMENTAL DECLARATION OF JOHN N. TEDFORD, IV

I, John N. Tedford, IV, declare as follows:

1.      I am an attorney, duly licensed and entitled to practice before courts of the State of California, and I am a member in good standing of the Bar of this Court. I am a principal of a professional corporation that is a partner of the law firm of Danning, Gill, Diamond & Kollitz, LLP, counsel for Meruelo Maddux Properties, Inc. ("MMPI"), and fifty-three of its affiliated debtors and debtors-in-possession (collectively with MMPI, the "Debtors") in connection with bankruptcy cases filed by them on March 26 and 27, 2009, under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2.      I have personal knowledge of the facts in this declaration.  If called as a witness, I could testify competently to these facts.

3.      I have reviewed the *Opposition to Motion to Stay Proceedings* (the "Opposition") filed by Wells Fargo Bank, N.A. ("Wells Fargo").  This supplemental declaration is offered to address certain statements made in the Opposition regarding, among other things, Wells Fargo's claims that have been asserted against the bankruptcy estate of Santa Fe Commerce Center, Inc. ("Santa Fe"), and the other Debtors.

4.      I testified in my prior declaration that Wells Fargo's allowed claim will be paid in full through the Debtors' plan.  In the opposition, Wells Fargo claims this is incorrect, and the "entire balance of the promissory note" will not be paid because the non-default interest rate will be reduced to 4.0% per annum and past-due default interest will be "wiped out" under the plan.  I believe this claim is incorrect, overly simplistic and/or misleading for a number of reasons.

5.      Among other things, the Debtors' proposed plan does not "wipe out" past-due default interest.  Indeed, the Debtors' projections filed with the Bankruptcy Court included default interest through the anticipated effective date of the plan.  Of

NEUFELD, MARKS, GRALNEK & MAKER
A PROFESSIONAL CORPORATION
360 East Second Street • Suite 703 • Los Angeles, California 90012
Telephone: (213) 625-2625 • Facsimile: (213) 625-2650

1  course, the Debtors reserve the right to contest allowance of default interest asserted

2  by secured creditors where such default interest is not enforceable under applicable

3  law.  However, it is incorrect to say that the Debtors are proposing to wipe out past

4  due default interest.

5      6.    As of the effective date of Santa Fe's plan, Wells Fargo will have an

6  "Allowed Claim" which will be paid off, in full, with interest at a rate of 4.0% (or

7  such other rate as the Bankruptcy Court establishes), over five to seven years.  Santa

8  Fe will have the right, but not the obligation, to pay off the loan sooner.  Because

9  Wells Fargo's claim is oversecured (the value of the Property exceeds the amount

10 owed by Santa Fe under the Loan Documents), the Bankruptcy Code provides that

11 Wells Fargo's Allowed Claim will not only include the principal balance owed by

12 Santa Fe, but also past due interest, fees, costs and other charges that the Bankruptcy

13 Court finds are enforceable against Santa Fe as of the effective date.  Thus, if the

14 principal owed to Wells Fargo is approximately $10.1 million and $2.2 million of

15 interest (including default interest, if allowed) accrues through the effective date of

16 the plan, Wells Fargo will thereafter be paid monthly interest equal to 4.0% per

17 annum on the new $12.3 million principal balance.  To the extent that fees, costs and

18 other charges are allowed by the Bankruptcy Court because they are enforceable

19 against Santa Fe under applicable law, these amounts will increase the amount of the

20 Allowed Claim and, by extension, the monthly payment.  In other words, all allowed

21 amounts owed to Wells Fargo as of the effective date will be recapitalized into the

22 new principal amount of Santa Fe's obligation to Wells Fargo going forward, and

23 Wells Fargo will receive interest on the then-accrued interest, attorneys fees, and

24 any other allowed charges.  Though the amount of each monthly interest payment

25 after the effective date may be less than the monthly payment that otherwise would

26 be made under the existing contract, to state that Wells Fargo will receive less in

27 total under the plan simply because of the reduction in the interest rate is too

28 simplistic, as the lower interest rate will be applied to a larger principal amount.

NEUFELD, MARKS, GRALNEK & MAKER
A PROFESSIONAL CORPORATION
360 East Second Street • Suite 703 • Los Angeles, California 90012
Telephone: (213) 625-2625 • Facsimile: (213) 625-2650

NEUFELD, MARKS, GRALNEK & MAKER
A PROFESSIONAL CORPORATION
360 East Second Street • Suite 705 • Los Angeles, California 90012
Telephone: (213) 625-2625 • Facsimile: (213) 625-2650

1    Contrary to the impression Wells Fargo attempts to convey, Wells Fargo will be

2    paid its Allowed Claim, including pre-effective date interest, fees and other charges,

3    *in full* over time, and with interest.

4          7.    Of course, in order to determine the amount of Wells Fargo's Allowed

5    Claim against Santa Fe, the Bankruptcy Court will need to make determinations and

6    findings regarding how much Santa Fe owes to Wells Fargo.  According to the proof

7    of claim filed by Wells Fargo in Santa Fe's case, Wells Fargo is asserting a claim

8    for principal, interest, a "yield maintenance pre-payment sum" of $1,331,486.26,

9    late charges, servicer administrative fees, attorneys' fees, and various other costs.  A

10   true and correct copy of the first two pages of Wells Fargo's proof of claim filed in

11   the Santa Fe case is attached as Exhibit "1" hereto.  As I discussed in my previous

12   declaration, Santa Fe disputes that Wells Fargo is entitled to the yield maintenance

13   prepayment charge.  Santa Fe also expects that pursuant to state and federal

14   bankruptcy law it will dispute, among other things, all or a significant amount of the

15   attorneys' fees that Wells Fargo will almost certainly seek to charge to Santa Fe

16   under the loan.  Logically, it seems that the Bankruptcy Court's determination with

17   regard to the amounts legally owed to Wells Fargo by Santa Fe will be relevant to

18   the amount of Wells Fargo's alleged claims against Mr. Meruelo under the Guaranty

19   Agreement at issue in this case.

20         8.    By my reading of Wells Fargo's deed of trust against Santa Fe's real

21   property, Santa Fe is personally liable for "losses" resulting from Santa Fe's non-

22   compliance with special purpose entity ("SPE") provisions.  In that regard, Wells

23   Fargo claims on page 6 of the Opposition that $1,443,668.40 of Santa Fe's money

24   was commingled with related entities' funds prior to February 28, 2009, that about

25   $1.07 million has been commingled since February 28, 2009, and that Wells Fargo

26   has been damaged as a result of these actions.  Assuming for the sake of argument

27   that the first two claims are correct (of course, nothing in this declaration waives the

28   rights of the Debtors to prove otherwise), Wells Fargo noticeably fails to advise the

149561.1

NEUFELD, MARKS, GRALNEK & MAKER
A PROFESSIONAL CORPORATION
360 East Second Street • Suite 703 • Los Angeles, California 90012
Telephone: (213) 625-2625 • Facsimile: (213) 625-2650

1  Court of, among other things, the following:

2            a.      Over Wells Fargo's objection, the Bankruptcy Court authorized

3  all of the Debtors, including Santa Fe, to continue to utilize their prepetition cash

4  management system.  Such authority was granted on an interim basis at the

5  beginning of the case, and was approved on a final basis by order entered on or

6  about January 13, 2010.  A true and correct copy of that order is attached as Exhibit

7  "2" hereto.  Wells Fargo is fully aware of the order, and the authority that has been

8  granted by the Bankruptcy Court.  In truth, although Wells Fargo accuses Santa Fe

9  of acting wrongfully with regard to handling of rents received since the bankruptcy

10  cases were filed, the alleged wrongful conduct about which Wells Fargo complains

11  has been expressly authorized by the Bankruptcy Court.  Any suggestion by Wells

12  Fargo that the Debtors, including Santa Fe, have not acted appropriately is, at best,

13  misleading.

14            b.      The Debtors dispute that Wells Fargo suffered any damages as a

15  result of any commingling of funds prior to the Chapter 11 petition date.  Again, this

16  is something that will need to be determined by the Bankruptcy Court because Wells

17  Fargo has filed claims against each of the other 53 Debtors' estates in the amount of

18  $1,443,668.40 for damages that Wells Fargo claims it suffered.  A true and correct

19  copy of the proof of claim filed by Wells Fargo in the Meruelo Maddux Properties,

20  Inc., case is attached as Exhibit "3" hereto.  Basically, Wells Fargo is asserting

21  claims against each of the other Debtors for the amount of damages it allegedly

22  suffered as a result of funds allegedly being utilized by entities other than Santa Fe.

23  The Debtors believe that there are a number of grounds on which Wells Fargo's

24  alleged claims should be disallowed, including that Wells Fargo did not suffer any

25  damages as a result of the alleged violations of the SPE provisions in the loan

26  documents, and that Santa Fe was aware of the Company's integrated cash

27  management system and any claims relating to damages purportedly resulting from

28  adherence to that system have been waived.  In any event, these are issues that will

149561.1                                      7

NEUFELD, MARKS, GRALNEK & MAKER
A PROFESSIONAL CORPORATION
360 East Second Street • Suite 703 • Los Angeles, California 90012
Telephone: (213) 625-2625 • Facsimile: (213) 625-2650

1   need to be decided by the Bankruptcy Court when it evaluates the merits of Wells

2   Fargo's alleged claims, and therefore the question of whether Wells Fargo was

3   damaged by any non-adherence to SPE provisions, and the amount of such damages,

4   if any, will be squarely before the Bankruptcy Court.

5        9.    The Opposition makes a few statements regarding the Bankruptcy

6   Court's ruling on the temporary enforcement injunction that was contained in the

7   Debtors' proposed plan that warrant brief responses.  First, the Opposition misleads

8   the Court when it states that Mr. Meruelo's motion for a stay of this District Court

9   proceeding was filed in an attempt to get around the Bankruptcy Court's ruling on

10   the temporary enforcement injunction.  Based on my discussions with counsel for

11   Mr. Meruelo and counsel for Wells Fargo (which also represents Wells Fargo in the

12   bankruptcy case), I can attest that Wells Fargo's counsel knew a few months ago

13   that Mr. Meruelo intended to seek a stay, but probably only if Wells Fargo insisted

14   on advancing (unnecessarily, in my view) the litigation in this District Court action

15   by filing a motion for summary judgment.  The date on which Mr. Meruelo filed his

16   motion for a stay was dictated by the date on which Wells Fargo set a hearing on its

17   motion for summary judgment, not by any decision of the Bankruptcy Court.  In my

18   opinion, there was little reason to burden this Court with Mr. Meruelo's motion until

19   Wells Fargo chose to try to litigate matters in this Court that will be determined by

20   the Bankruptcy Court.

21        10.    Second, Wells Fargo still knowingly mischaracterizes the temporary

22   enforcement injunction that was contained in the proposed plan.  Unlike *permanent*

23   injunctions in Chapter 11 plans which have been found by the Ninth Circuit Court of

24   Appeals to improperly effectuate a discharge of non-debtor guarantors, the

25   *temporary* enforcement injunction in the Debtors' proposed plan would apply only

26   so long as the Debtor (*i.e.*, Santa Fe) made all post-confirmation payments required

27   under the plan.  As noted in the Bankruptcy Court's ruling, the Ninth Circuit ruled

28   that *permanent* injunctions violate 11 U.S.C. § 524(e) (*In re American Hardwoods,*

149561.1

NEUFELD, MARKS, GRALNEK & MAKER
A PROFESSIONAL CORPORATION
360 East Second Street • Suite 703 • Los Angeles, California 90012
Telephone: (213) 625-2625 • Facsimile: (213) 625-2650

1    855 F.2d 621 (9th Cir. 1989)).  Whether temporary injunctions also are prohibited is

2    an open question in this circuit because there is no Ninth Circuit Court of Appeals

3    decision addressing such factual circumstances, as evidenced by the recent decisions

4    of an Arizona bankruptcy court and district court in *In re Regatta Bay, LLC*, 406

5    B.R. 875 (Bankr. D. Ariz. 2009) (temporary enforcement injunction is authorized by

6    the Bankruptcy Code), and *In re Regatta Bay, LLC*, 2009 WL 5730501 (D. Ariz.

7    Oct. 30, 2009) (reversing the bankruptcy court).  Although the Bankruptcy Court

8    has ruled against the Debtors on that issue, Wells Fargo's attempt to portray the

9    motion as an end-run around the Bankruptcy Court's ruling and "binding Ninth

10   Circuit precedent" is, in my view, inaccurate and simply posturing by Wells Fargo.

11         11.   Third, in discussing the temporary enforcement injunction Wells Fargo

12   states that "the Bankruptcy Court conducted a special hearing to determine whether

13   such an injunction was permissible."  It appears that Wells Fargo wants to color the

14   Court's view of the bankruptcy case by giving the impression that inclusion of the

15   temporary enforcement injunction was so questionable the Bankruptcy Court went

16   out of its way to have a "special hearing" on the issue.  That is simply not true.  In

17   truth, confirmation of a Chapter 11 plan is a two step process.  In the first step, the

18   court approves the form of a disclosure statement which is sent out to creditors and

19   others entitled to vote for or against a proposed plan.  The disclosure statement and

20   ballots are then sent to the appropriate parties.  Assuming that at least one class

21   entitled to vote votes in favor of the plan, the Court proceeds to the second step

22   during which the court considers whether the plan should be confirmed.  To

23   streamline this process, the court may address certain issues during the first step

24   even though they technically relate to the second.  Here, the Bankruptcy Court

25   established a procedure pursuant to which the parties submitted briefs regarding

26   three legal issues regarding confirmation that could be ruled on sooner rather than

27   later.  The Debtors suggested that the issue relating to the temporary enforcement

28   injunction was a purely legal issue that could be briefed and ruled on at this time.  A

149561.1

1   hearing on all three issues was held on June 11, 2010.  The implication by Wells

2   Fargo that the Bankruptcy Court chose to conduct a "special hearing" because it had

3   a negative view of the temporary enforcement injunction is incorrect.

4        12.    I stated in my prior declaration that the Debtors hope to confirm a plan

5   within three to four months.  I disagree with the implication by Mr. Geher that there

6   is no possibility that confirmation will occur within that timeframe.  For example,

7   Mr. Geher states that the current proposed disclosure statement will not be approved

8   because it contains the temporary enforcement injunction language.  Actually, the

9   Bankruptcy Court can enter an order approving the proposed disclosure statement

10  with revisions to be made thereto, and the Debtors can serve a revised version of the

11  disclosure statement on creditors.  As for the amount of time it will take for there to

12  be a trial on confirmation issues, I do not believe that the trial need be conducted

13  over a period of months, as Mr. Geher seems to believe.  Even if the disclosure

14  statement is not approved until August, I believe a plan can be confirmed within

15  four months.

16

17        I declare under penalty of perjury under the laws of the United States of

18  America that the foregoing is true and correct.  Executed June 28, 2010, at Los

19  Angeles, California.

20

21                                    _____
                                       John N. Tedford, IV
22

23

24

25

26

27

28

**10**

SUPPLEMENTAL TEDFORD DECLARATION
IN SUPPORT OF MOTION TO STAY

NEUFELD, MARKS, GRALNEK & MAKER
A PROFESSIONAL CORPORATION
360 East Second Street • Suite 703 • Los Angeles, California 90012
Telephone: (213) 625-2625 • Facsimile: (213) 625-2650

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT **CENTRAL** DISTRICT OF **CALIFORNIA** | **PROOF OF CLAIM** |
|---|---|

| Name of Debtor:<br>SANTA FE COMMERCE CENTER, INC. | Case Number:<br>1:09-bk-13368-KT |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Wells Fargo Bank, N.A., successor by consolidation to Wells Fargo Bank Minnesota, National Association as Trustee for the Registered Certificateholders of GMAC Commercial Mortgage Securities, Inc., Mortgage Pass-Through Certificates, Series 2002-C1 acting by and through Capmark Finance Inc., Its Special Servicer ("Capmark")

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
*(If known)*

Name and address where notices should be sent:
John A. Graham, Esq.
Jeffer, Mangels, Butler & Marmaro LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067
Telephone number: 310-203-8080

Filed on: _____

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:**   $ See attachment.

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** Money loaned
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

**3a. Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☒ Real Estate   ☐ Motor Vehicle   ☐ Other
**Describe:** Please see attachment.

**Value of Property:** $ 14,750,000   **Annual Interest Rate** _____%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $ _____   Basis for perfection: _____

Amount of Secured Claim: $ _____   Amount Unsecured: $ _____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(_____).

**Amount entitled to priority:**

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date: 7/20/2009 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>*John A. Graham*   John A. Graham, Attorney for Claimant | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152

6131949v1

Exhibit 1

Case 2:10-cv-00315-CAS-AJW   Document 41   Filed 06/28/10   Page 12 of 34   Page ID
#:215
Case 1:09-bk-13368-KT   Claim 2-1   Filed 07/20/09   Desc Main Document   Page 2 of
2

## ATTACHMENT TO CAPMARK PROOF OF CLAIM

Santa Fe Commerce Center, Inc., a debtor herein ("Debtor") obtained a loan in the original principal of $11,016,000 made by GMAC Commercial Mortgage Corporation (the "Loan"). The Loan has been assigned to Capmark and is secured by that multi-tenant industrial real property commonly known as Crown Commerce Center located at 2445, 2460 and 2535 East 12th Street, Los Angeles, California (the "Property"). The Loan is evidenced by, among other things, that (i) Promissory Note (Fixed Rate), dated August 10, 2001; and (ii) Deed of Trust and Security Agreement, which was recorded in the Recorder's Office of Los Angeles County as Instrument No. 01 1469802, copies of which are attached hereto Exhibits "A" and "B," respectively.

From and after February 5, 2009, Debtor has failed to make any payments on account of the Loan. As of July 2, 2009, pursuant to the Loan and the various agreements made in connection therewith, including the Promissory Note, Debtor, upon a sale of the Property or a full payoff of the Loan, owes, and is obligated to pay Capmark the following amounts:

| | | |
|---|---|---:|
| a. | Principal Balance: | $10,170,904.52 |
| b. | Contractual Non-Default Interest: | 376,165.25 |
| c. | Additional Default/Premium Interest: | 14,498.00 |
| d. | Yield Maintenance Pre-Payment Sum: | 1,331,486.26 |
| e. | Late Charges: | 26,906.11 |
| f. | Servicer Administrative Fees: | 300.00 |
| g. | Attorneys' Fees (estimate thru 6/26/09), Appraisal Fees ($8,000) and Site Inspection Fees (approximately $350.00): | 45,497.55 |

## GRAND TOTAL AS OF JULY 2, 2009   $12,065,757.69

From July 2, 2009 until the Loan is satisfied, the *per diem* interest accruing on account of the Loan is (a) $2,113.29 for contract rate nondefault interest; and (b) $177.24 for additional default/premium interest. Also, Capmark will continue to incur further legal fees in connection with the Loan.

Exhibit 1

6301324v1

1   RICHARD K. DIAMOND (State Bar No. 070634)
    *RDiamond@DGDK.com*
2   JOHN J. BINGHAM, JR. (State Bar No. 075842)
    *JBingham@DGDK.com*
3   JOHN N. TEDFORD, IV (State Bar No. 205537)
    *JTedford@DGDK.com*
4   DANNING, GILL, DIAMOND & KOLLITZ, LLP
    2029 Century Park East, Third Floor
5   Los Angeles, California 90067-2904
    Telephone:  (310) 277-0077
6   Facsimile:  (310) 277-5735

7   Attorneys for Meruelo Maddux Properties, Inc., and
    affiliated Debtors and Debtors-in-Possession

8                   UNITED STATES BANKRUPTCY COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                  SAN FERNANDO VALLEY DIVISION

11

12  In re                          )  Case No. 1:09-bk-13356-KT
                                    )
13  MERUELO MADDUX PROPERTIES, INC., et )  Chapter 11
    al.,[1]                         )
14                                  )  (Jointly Administered)
            Debtors and Debtors-in-Possession.  )
15                                  )
                                    )  **ORDER AUTHORIZING THE**
16  _____ )  **DEBTORS' USE OF CASH**
                                    )  **COLLATERAL ON A FINAL BASIS**
17  ☑   Affects all Debtors         )  **AND APPROVING THE DEBTORS'**
                                    )  **USE OF ITS CASH MANAGEMENT**
18  ☐   Affects the following Debtor(s):  )  **SYSTEM**
                                    )
19                                  )
                                    )  Date:      October 28, 2009
20                                  )  Time:      9:00 p.m.
                                    )  Place:     Courtroom 301
21                                  )             21051 Burbank Blvd.
                                    )             Woodland Hills, California
22  _____ )

23

24  ─────────────────────────────────
    [1] Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by
25  affiliated entities.  The affiliated case numbers are as follows: 1:09-bk-13338-KT; 1:09-bk-13358-KT; 1:09-bk-13359-
    KT; 1:09-bk-13360-KT; 1:09-bk-13361-KT; 1:09-bk-13362-KT; 1:09-bk-13363-KT; 1:09-bk-13364-KT; 1:09-bk-
26  13365-KT; 1:09-bk-13366-KT; 1:09-bk-13367-KT; 1:09-bk-13368-KT; 1:09-bk-13369-KT; 1:09-bk-13370-KT; 1:09-
    bk-13371-KT; 1:09-bk-13372-KT; 1:09-bk-13373-KT; 1:09-bk-13374-KT; 1:09-bk-13375-KT; 1:09-bk-13376-KT;
    1:09-bk-13377-KT; 1:09-bk-13378-KT; 1:09-bk-13379-KT; 1:09-bk-13380-KT; 1:09-bk-13381-KT; 1:09-bk-13382-
27  KT; 1:09-bk-13383-KT; 1:09-bk-13384-KT; 1:09-bk-13385-KT; 1:09-bk-13386-KT; 1:09-bk-13387-KT; 1:09-bk-
    13388-KT; 1:09-bk-13389-KT; 1:09-bk-13390-KT; 1:09-bk-13391-KT; 1:09-bk-13392-KT; 1:09-bk-13393-KT; 1:09-
    bk-13394-KT; 1:09-bk-13395-KT; 1:09-bk-13396-KT; 1:09-bk-13397-KT; 1:09-bk-13398-KT; 1:09-bk-13399-KT;
    1:09-bk-13400-KT; 1:09-bk-13401-KT; 1:09-bk-13402-KT; 1:09-bk-13403-KT; 1:09-bk-13404-KT; 1:09-bk-13405-
28  KT; 1:09-bk-13406-KT; 1:09-bk-13407-KT; 1:09-bk-13434-KT; and 1:09-bk-13439-KT.

                                    1

FILED & ENTERED

JAN 13 2010

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

Exhibit 2

Page 13

347237.01 [XP]      25195

1   There came on for hearing on the above captioned date, time and place a further hearing on

2   the motion of Meruelo Maddux Properties, Inc. ("MMPI"), and affiliated debtors, the debtors and

3   debtors in possession in the above-captioned cases (the "Debtors"), for an order authorizing the

4   Debtors' use of cash collateral, as such motion has been augmented and amended from time to time

5   (the "Cash Collateral Motion") and motion to approve Debtors' Use of their Cash Management

6   System ("Cash Management Motion").  The term "Debtors" does not include Meruelo Maddux –

7   845 Flower Street, LLC or Meruelo Chinatown, LLC or any other affiliate of MMPI that has not

8   filed a case under the Bankruptcy Code.

9   The Cash Collateral Motion and Cash Management Motion were originally filed on an

10   emergency basis and after hearings conducted on March 30, April 16, May 1, May 4, May 6, and

11   May 8, 2009, orders of the Court were entered on May 12, 2009, which orders are the currently

12   operative orders authorizing the use of cash collateral and authorizing the continued utilization of

13   the Debtors' cash management system on an interim basis (the two orders are collectively referred

14   to herein as the "Third Interim Cash Collateral Order").  (Docket Nos. 223 and 224).  Subsequent

15   to May 12, 2009, evidentiary and other hearings have been conducted from time to time, which

16   hearings concluded on the above captioned date as to all interested parties, with the exception of

17   certain issues pending with four Cash Collateral Creditors, as that term is hereinafter defined, as

18   further detailed hereinafter.

19   Based upon the arguments and representations of counsel and the stipulations and

20   agreements entered on the record, if any, the evidence submitted under declaration and the

21   testimony taken in open court and the documentary evidence admitted in connection therewith, the

22   prior rulings and findings from the bench and the rulings presented in, among other things, the

23   Court's Notice of Rulings on Certain Objections to Debtors' Motion for Final Order(s) Authorizing

24   Use of Cash Collateral and Use of Debtors' Cash Management System and on Related Relief from

25   Stay Motions entered on November 5, 2009 (Docket No. 832) , and sufficient cause appearing

26   therefor, it is

27   ///

28   ///

-2-

Exhibit 2

Page 14

1   **ORDERED**

2   **Introductory Provisions**

3       1.      The Cash Collateral Motion is granted on a final basis as set forth herein.  This order

4   replaces the Third Interim Cash Collateral Order.   Subject to the terms and conditions provided

5   herein, the Debtors are hereby authorized to use the cash collateral of the Cash Collateral Creditors,

6   defined herein as Bank of America ("BofA"), California Bank & Trust ("CBT"), Wells Fargo

7   Bank, N.A., successor by consolidation to Wells Fargo Bank Minnesota, National Association as

8   Trustee for the Registered Certificateholders of GMAC Commercial Mortgage Securities, Inc.,

9   Mortgage Pass-Through Certificates, Series 2002-C1 acting by and through Capmark Finance, Inc.,

10  Its Special Servicer ("Capmark Finance"), Cathay Bank ("Cathay"), Chinatrust Bank

11  ("Chinatrust"), Legendary Investors Group No. 1, LLC, as successor in interest to East West Bank

12  with respect to certain Cash Collateral Properties ("Legendary"), Imperial Capital Bank

13  ("Imperial"), Pacific Commerce Bank ("PCB"), The Stanford Group ("Stanford"), East West Bank

14  as successor to United Commercial Bank ("UCB"), Vahan and Anoush Chamlian ("Chamlian"),

15  Yoshiaki Murakami and Fumiko Murakami, as Co-Trustees of the Revocable Trust of Yoshiaki

16  Murakami and Fumiko Murakami U/T/A Dated June 16, 1988, and Yoshiaki Murakami, an

17  individual ("Murakami"), and 1248 Figueroa, LLC, successor in interest to East West Bank with

18  respect to one Cash Collateral Property ("1248 Figueroa").

19

20  **Cash Management**

21      2.      The Cash Management Motion is granted.  The Debtors are authorized to continue

22  to use their integrated Cash Management System as described in the Cash Management Motion

23  concurrent with the use of cash collateral and for such period as provided herein.  In connection

24  therewith:

25          a.      The Debtors are authorized, but not directed, to continue the operation of

26  their businesses, to transfer monies from Debtor to Debtor as necessary and appropriate, to

27  continue utilizing their existing Cash Management System to manage their cash, to pay

28  intercompany payables and to extend intercompany credit, in a manner consistent with the Debtors'

-3-

347237.01 [XP]      25195

Exhibit 2

Page 15

1  prepetition practice; provided, however, that on and after the Petition Date, the Debtors shall not

2  make any payment against or pay down a prepetition intercompany balance or debt.

3        b.    All intercompany claims against a Debtor by another Debtor arising after

4  the Petition Date as a result of intercompany transfers made in the ordinary course of business shall

5  be accorded administrative expense priority under sections 503(b) and 507(a)(2) of the Bankruptcy

6  Code.

7

8  **Cash Collateral**

9      3.    With respect to each Cash Collateral Property, which properties are identified and

10  defined in Exhibit "6" to the supplemental declarations of Richard Meruelo and Fred Skaggs

11  filed in support of the Cash Collateral Motion and the Cash Management Motion

12  ("Supplemental Declaration") on or about April 20, 2009 (Docket No. 95), the Debtors are

13  authorized to use cash collateral generated by the Cash Collateral Property to and through March

14  31, 2010, unless the Debtors fail to pay the first installment of the real property taxes assessed

15  against the Cash Collateral Property for the County of Los Angeles' 2009/2010 fiscal year, which

16  installment is due and payable without penalty on or before December 10, 2009 (the "December 10

17  Taxes"). In the event the Debtors fail to make a payment of such real property taxes for a Cash

18  Collateral Property on or before December 10, 2009, the Debtors' use of cash collateral

19  generated by such property shall terminate on December 31, 2009. In the event the Debtors do

20  not pay the December 10 taxes for a Cash Collateral Property by such date, the Debtors by no

21  later than December 11, 2009, shall provide the Cash Collateral Creditors with a writing

22  identifying the Cash Collateral Property for which it did not pay the December 10 Taxes and

23  the amount of taxes payable for such property on such date.

24      4.    The use of cash collateral shall be in the amounts and for the expenses set forth in

25  the projections attached as Exhibit "8" to the Supplemental Declaration. In that connection, and

26  subject to the immediately preceding sentence, it is further ordered that, absent further order of the

27  Court, as to each Cash Collateral Property, the Debtors shall not deviate by more than 20% in the

28  aggregate of all the line item expenditures from that projected for that property in the afore

Exhibit 2
Page 16

347237.01 [XP]    25195

1  described Exhibit "8" for the direct expenses of each respective Cash Collateral Property and the

2  Debtors shall only expend such funds as are necessary to operate and preserve their business.  The

3  term "direct expenses" does not include the line item for the Direct Corporate Property

4  Management Fee assessed against each of the Cash Collateral Properties and that expense is limited

5  in amount to that set forth in the above-identified Exhibit "8" forecasts for each of the Cash

6  Collateral Properties.

7       5.    After utilizing cash collateral generated by a Cash Collateral Property to pay the

8  direct expenses of preserving, maintaining and operating the Cash Collateral Properties, any excess

9  cash collateral generated by a Cash Collateral Property may be utilized by any other Debtor to pay

10  its ordinary direct costs and expenses of preserving, maintaining and operating its property and

11  business, including the general administrative expenses provided by the Service Level Debtors, as

12  that term has been defined in the case, subject to the provisions of paragraph 4 above.

13  Notwithstanding the foregoing, and absent further order of the Court, the Debtors shall not use cash

14  collateral to pay for the direct expenses of Meruelo Maddux – 845 S. Flower Street, LLC, or

15  Meruelo Chinatown, LLC or of any non-debtor affiliate.

16

17  **Adequate Protection**

18       6.    As and for adequate protection for the use of the Cash Collateral Creditors' cash

19  collateral, in addition to the equity in the Cash Collateral Properties protecting the Cash Collateral

20  Creditors' interests therein, the Debtors proposed, among other things, and the Court hereby orders

21  as a base level of adequate protection ("Base Adequate Protection"), the following:

22       a.    each Cash Collateral Creditor is hereby granted a replacement lien in its

23  respective post-petition cash collateral, with the same force, effect, validity and priority of the liens

24  held by the Cash Collateral Creditors in or against their respective pre-petition real property

25  collateral;

26       b.    the Debtors shall maintain and preserve the Cash Collateral Properties by

27  payment of the ordinary expenses for maintaining and preserving the real property collateral;  and

28

-5-

Exhibit 2

Page 17

347237.01 [XP]    25195

1           c.      the Debtors shall pay real property taxes due and payable on and after

2 November 1, 2009, owing to the County of Los Angeles assessed against the Cash Collateral

3 Properties on or before the date on which such taxes are payable and due without penalty.

4         7.      The following Cash Collateral Creditors' interests in cash collateral generated from

5 the following Cash Collateral Properties are found to be adequately protected by the Base Adequate

6 Protection and no further adequate protection need be provided:

7           a.      BofA with respect to the Cash Collateral Property referred to in these

8 proceedings as Southpark;

9           b.      Cathay with respect to the Cash Collateral Properties referred to in these

10 proceedings as Alameda Square and the Seventh Street Produce Market;

11           c.      Legendary with respect to the Cash Collateral Properties referred to in these

12 proceedings as Sky Arc, SCI-Arc, 620 Gladys,[2] Little J, 336 W. 11th Street, 1500 Griffith, and 4th

13 Street Center;

14           d.      The Stanford Group with respect to the Cash Collateral Property referred to

15 in these proceedings as 905 West 8th Street;

16           e.      UCB with respect to the Cash Collateral Property referred to in these

17 proceedings as Wall Street Market, as provided in the stipulation between the parties;

18           f.      Chamlian with respect to the Cash Collateral Property referred to in these

19 proceedings as 2131 Humboldt; and

20           g.      1248 Figueroa with respect to the Cash Collateral Property referred to in

21 these proceedings as the Santa Fe Plaza property, pursuant to the written consent of the Cash

22 Collateral Creditor, 1248 Figueroa.

23 _____

24     [2] For purposes of this order, reference to "620 Gladys" is to those parcels owned by Merco Group – 620 Gladys Avenue, LLC, and subject to a lien in favor of Legendary. Those parcels are

25 described in an appraisal submitted by Legendary as being commonly known as 614-620 Gladys, 830 and 838 East 6th Street, and 647-649 Ceres Avenue, Los Angeles, California, and may be more particularly identified by their assessors parcel numbers: 5147-030-005 through 009, 037, 050, 053

26 through 055, 061, and 062. References in this order to "Cash Collateral Properties" do not include parcels owned by Merco Group – 620 Gladys Avenue, LLC, which are not subject to a lien in favor

27 of Legendary.

28

-6-

8.      The Court finds and orders that where it is ordered hereinafter that the amount of

adequate protection to be provided by the Debtors is to be calculated based upon the "actual

amount of cash collateral used," this phrase means the total cash collateral generated by the Cash

Collateral Property, less the direct expenses of maintenance, operation and preservation of the real

property collateral, and less any real property taxes paid.  If the protection is measured by the use

of actual amount of cash collateral used, the estimated amount going forward will be the monthly

average of the net amount as of the effective date of the calculation.  The amount used under the

allocation for general corporate overhead, the line described as Direct Corporate Property

Management Fee, should be included in the amount to be protected rather than treated as a direct

expense.

9.      The interests of the following Cash Collateral Creditors (hereinafter referred to as

the "Replacement Lien Cash Collateral Creditors") in cash collateral generated from the following

Cash Collateral Properties are found not to be adequately protected by the Base Adequate

Protection alone.  However, the Replacement Lien Cash Collateral Creditors' interests in cash

collateral generated from the following Cash Collateral Properties are deemed to be adequately

protected by the Base Adequate Protection plus a replacement lien in one or more of the

Unencumbered Properties (identified in Exhibit "7" to the Supplemental Declaration) to be

tendered by the Debtors, which tendered properties are hereinafter referred to as the Replacement

Lien Property Pool and in the amounts described below:

a.      Capmark Finance with respect to the Cash Collateral Property referred to in

these proceedings as the Crown Commerce Center in an amount equal to the lesser of (a) the actual

amount of cash collateral used from November 1, 2009 through March 31, 2010, or such shorter

period if the use of cash collateral is terminated before such period, or (b) the post-petition accruing

interest at the default rate beginning on November 1, 2009 through March 31, 2010, or such shorter

period if the use of cash collateral is terminated before such period.  In addition, the Debtors,

subject to the agreement of Capmark Finance or other order of the Court, are to make certain roof

repairs for the improvements at Crown Commerce Center from cash collateral or make other

provision for the same.

-7-

347237.01 [XP]      25195

Exhibit 2

Page 19

1          b.     CBT with respect to the Cash Collateral Property referred to in these

2 proceedings as 788 South Alameda in the amount of the cash collateral actually used from

3 March 27, 2009 through March 31, 2010, or such shorter period if the use of cash collateral is

4 terminated before such period.

5          c.     Chinatrust with respect to the Cash Collateral Property referred to in these

6 proceedings as 3185 Washington in an amount equal to the lesser of (a) the cash collateral actually

7 used from March 27, 2009 through March 31, 2010, or such shorter period if the use of cash

8 collateral is terminated before such period, or (b) interest that has and will accrue at the default rate

9 from March 27, 2009 through March 31, 2010, or such shorter period if the use of cash collateral is

10 terminated before such period.

11          d.     Legendary with respect to the Cash Collateral Property referred to in these

12 cases as 425 West 11th Street in an amount equal to the lesser of (a) the cash collateral actually

13 used from March 27, 2009 through March 31, 2010, or such shorter period if the use of cash

14 collateral is terminated before such period, or (b) interest that has and will accrue at the default rate

15 from March 27, 2009 through March 31, 2010, or such shorter period if the use of cash collateral is

16 terminated before such period.  In the event the cash collateral used is less than the accruing

17 interest, the estimated amount of such cash collateral so used will be the monthly average of the net

18 amount as of the effective date of the calculation.

19          e.     Legendary with respect to the Cash Collateral Property referred to in these

20 cases as 3rd & Omar an amount equal to interest that has and will accrue at the default rate from

21 March 27, 2009 through March 31, 2010, or such shorter period if the use of cash collateral is

22 terminated before such period.

23          f.     Legendary with respect to the Cash Collateral Property referred to in these

24 cases as 420 Boyd Street in an amount equal to the cash collateral actually used from March 27,

25 2009 through March 31, 2010, or such shorter period if the use of cash collateral is terminated

26 before such period.  The estimated amount of such cash collateral so used will be the monthly

27 average of the net amount as of the effective date of the calculation.

28

-8-

Exhibit 2
Page 20

347237.01 [XP]    25195

1           g.     UCB with respect to the Cash Collateral Property referred to in these cases

2 as 2640 Washington in an amount equal to the cash collateral actually used from March 27, 2009

3 through March 31, 2010, or such shorter period if the use of cash collateral is terminated before

4 such period.  The estimated amount of such cash collateral so used will be the monthly average of

5 the net amount as of the effective date of the calculation.

6       10.     Pending the Court's determination of which of the Unencumbered Properties is to be

7 included and comprise the Replacement Lien Property Pool, the Replacement Lien Cash Collateral

8 Creditors shall continue to have a lien or charge in all of the Unencumbered Properties, and such

9 lien or charge shall be deemed perfected as to each of the Replacement Lien Cash Collateral

10 Creditors without the necessity of recordation of a deed of trust or other instrument evidencing the

11 interests of each of the Replacement Lien Cash Collateral Creditors as such interests are granted

12 herein.  The lien or charge shall attach to the Unencumbered Properties, including thereafter the

13 Replacement Lien Property Pool, with the same force, effect, and validity of the liens held by the

14 Replacement Lien Cash Collateral Creditors in or against their respective pre-petition real property

15 collateral, including the rents, issues and profits of such real property collateral.

16      11.     The lien or charge granted hereby to the Replacement Lien Cash Collateral

17 Creditors on the Unencumbered Properties and/or the Replacement Lien Property Pool shall be and

18 is granted *parri passu*, and matters concerning the enforcement of such lien or charge, if necessary,

19 shall be deferred for further proceedings before the Court.  Upon an order of the Bankruptcy Court

20 identifying the composition of the Replacement Lien Pool, the liens or charges granted herein upon

21 the same shall be released as to only those Unencumbered Properties not included in the

22 Replacement Lien Property Pool and such liens shall only remain extant as to the Replacement

23 Lien Pool.

24      12.     With respect to the use of cash collateral generated from the Cash Collateral

25 Property referred to in this case as Union Lofts, BofA is found to not be adequately protected by

26 the Base Adequate Protection alone.  However, BofA's interests are found to be adequately

27 protected by additional adequate protection to be afforded to BofA pursuant to a separate order of

28 the Court entered or to be entered in connection with BofA's motion for relief from the automatic

Exhibit 2

Page 21

347237.01 [XP]    25195

1   stay – *i.e.*, the Base Adequate Protection plus a junior replacement lien against the real property

2   referred to in this case as Southpark in an amount equal to the interest that has and will accrue at

3   the default rate from August 1, 2009 through March 31, 2010, or such shorter period if the use of

4   cash collateral is terminated before such period.

5         13.    Nothing in this Order constitutes a grant or denial of the Cash Collateral Motion on

6   a final basis with respect to the following described Cash Collateral Properties and Cash Collateral

7   Creditors ("Pending Cash Collateral Creditors").  Pending entry of a separate order, the terms and

8   conditions of this order shall apply as if each of the Pending Cash Collateral Creditors were

9   deemed to be a Replacement Lien Cash Collateral Creditor:

10           a.    Imperial with respect to the Cash Collateral Property generally referred to in

11   these cases as Meruelo Farms;

12           b.    Imperial with respect to the Cash Collateral Property referred to in these cases

13   as 1919 Vineburn; and

14           c.    Imperial with respect to the Cash Collateral Property referred to in these cases

15   as Uhlman One.

16         14.    Nothing herein shall prevent or prohibit Debtors or the Cash Collateral Creditors

17   from seeking to modify or terminate this Order in connection with a confirmed plan or plans of

18   reorganization or otherwise.

19         15.    Nothing herein modifies or alters any separate order entered by the Court on a Cash

20   Collateral Creditor's motion for relief from stay.

21         16.    The Court shall retain jurisdiction with respect to any matters, claims, rights or

22   disputes arising from or related to the implementation of this Order.

23         17.    Legendary's objections to the

24       # # # #

25   DATED: January 13, 2010

                      *Kathleen Thompson*
                      United States Bankruptcy Judge

26

27

28

| In re: MERUELO MADDUX PROPERTIES, INC., Debtor(s). | CHAPTER: 11<br>CASE NUMBER: 1:09-bk-13356-KT |
|---|---|

NOTE: When using this form to indicate service of a proposed order, DO NOT list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: Danning, Gill, Diamond & Kollitz, LLP, 2029 Century Park East, Third Floor, Los Angeles, CA 90067.

A true and correct copy of the documents described as follows: **ORDER AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL ON A FINAL BASIS AND APPROVING THE DEBTORS' USE OF ITS CASH MANAGEMENT SYSTEM** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:** On December 18, 2009, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Via U.S. Mail:
Hon. Kathleen Thompson, U.S. Bankruptcy Court, 21041 Burbank Blvd, Woodland Hills, CA 90012, Suite 301, Woodland Hills, CA  91367

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on December 18, 2009, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

Via E-Mail
Michael C Abel, mca@dgdk.com (counsel for Debtors)
John J Bingham, jbingham@dgdk.com (counsel for Debtors)
Julia W Brand, jwb@dgdk.com (counsel for Debtors)
Jennifer L Braun, jennifer.l.braun@usdoj.gov (Office of the U.S. Trustee)
Martin J Brill, mjb@lnbrb.com (counsel for interested party)
Howard Camhi, hcamhi@ecjlaw.com (counsel for Kennedy Funding Inc.)
Ronald R Cohn, rcohn@horganrosen.com (counsel for Pacific Commerce Bank)
Michaeline H Correa, mcorrea@jonesday.com (counsel for MTA)

-11-

347237.01 [XP]     25195

Exhibit 2
Page 23

| | | |
|---|---|---|
| 1 | In re: MERUELO MADDUX PROPERTIES, INC., | CHAPTER: 11 |
| 2 | Debtor(s). | CASE NUMBER: 1:09-bk-13356-KT |

3  Brian L Davidoff, bdavidoff@rutterhobbs.com (counsel for Murakami)
   Aaron De Leest, aed@dgdk.com (counsel for Debtors)
4  Michael G Fletcher, mfletcher@frandzel.com (counsel for Cathay Bank)
   Donald L Gaffney, dgaffney@swlaw.com (counsel for Bank of America)
5  Thomas M Geher, tmg@jmbm.com (counsel for Capmark Finance Inc.)
   Bernard R Given, bgiven@frandzel.com (counsel for Cathay Bank)
6  Barry S Glaser, bglaser@swjlaw.com (counsel for L.A. County)
   John A Graham, jag@jmbm.com (counsel for Capmark Finance Inc.)
7  Ofer M Grossman, omglaw@gmail.com (counsel for Justman Packaging & Display)
   Asa S Hami, ahami@sulmeyerlaw.com (counsel for Committee)
8  Brian T Harvey, bharvey@buchalter.com (counsel for California Bank & Trust)
   William W Huckins   whuckins@allenmatkins.com, clynch@allenmatkins.com
9  Lance M. Jurich, ljurich@loeb.com (counsel for Canpartners)
   Andrew F Kim, kim-a@blankrome.com (counsel for Imperial Bank)
10 Michael S Kogan, mkogan@ecjlaw.com (counsel for Kennedy Funding Inc.)
   Tamar Kouyoumjian, tkouyoumjian@sulmeyerlaw.com (counsel for Committee)
11 Duane Kumagai, dkumagai@rutterhobbs.com (counsel for Murakami)
   David E Leta, dleta@swlaw.com (counsel for FNBN-CMLCON I LLC)
12 Katherine Lien   katie.lien@sbcglobal.net, katielien@gmail.com
   Steven K Linkon, slinkon@rcolegal.com (counsel for Chinatrust Bank)
13 Richard Malatt, rmalatt@gmail.com (counsel for interested party)
   Elmer D Martin, elmermartin@msn.com (counsel for United Commercial Bank)
14 Elissa Miller, emiller@sulmeyerlaw.com (counsel for Committee)
   Iain A W Nasatir, inasatir@pszjlaw.com (counsel for East West Bank and Legendary)
15 Jennifer L Nassiri   jennifer.nassiri@dlapiper.com
   Lawrence Peitzman, lpeitzman@pwkllp.com (counsel for interested party)
16 Eric S Pezold, epezold@swlaw.com (counsel for Bank of America)
   Dean G Rallis Jr, drallis@sulmeyerlaw.com (counsel for Committee)
17 Michael H Raichelson, mhr@cabkattorney.com (counsel for Stanford Group)
   Michael B Reynolds, mreynolds@swlaw.com (counsel for FNBN-CMLCON I LLC)
18 Martha E Romero, Romero@mromerolawfirm.com (counsel for San Bernardino County)
   Victor A Sahn, vsahn@sulmeyerlaw.com (counsel for Committee)
19 Jeffrey S Shinbrot, shinbrot@earthlink.net (counsel for Rodriguez, et al.)
   Stephen Shiu, sshiu@swlaw.com (counsel for FNBN-CMLCON I LLC)
20 Daniel H Slate, dslate@buchalter.com (counsel for California Bank & Trust)
   Surjit P Soni, surj@sonilaw.com (counsel for Legendary)
21 James Stang, jstang@pszjlaw.com (counsel for East West Bank and Legendary)
   John N Tedford, jtedford@dgdk.com (counsel for Debtors)
22 James A Timko   jtimko@allenmatkins.com
   Alan G Tippie, atippie@sulmeyerlaw.com (counsel for Committee)
23 United States Trustee (SV), ustpregion16.wh.ecf@usdoj.gov
   Jason L Weisberg, jason@gdclawyers.com (counsel for Roofcorp)
24 Jasmin Yang, jyang@swlaw.com (counsel for Bank of America)

25         ☐ Service information continued on attached page

26 I declare under penalty of perjury under the laws of the United States of America that the foregoing is true
   and correct.
27

28   December 18, 2009     John N. Tedford, IV     /s/ John N. Tedford, IV
     *Date*          *Type Name*         *Signature*

347237.01 [XP]   25195

Exhibit 2

Page 24

| In re: MERUELO MADDUX PROPERTIES, INC.  Debtor(s). | CHAPTER 11 CASE NUMBER 1:09-bk-13356-KT |
| --- | --- |

### NOTE TO USERS OF THIS FORM:

**1)** Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3) Category I.** below: The United States trustee and case trustee (if any) will always be in this category.
**4) Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. <u>DO NOT</u> list an address if person/entity is listed in category I.

### NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled **ORDER AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL ON A FINAL BASIS AND APPROVING THE DEBTORS' USE OF ITS CASH MANAGEMENT SYSTEM** was entered on the date indicated as Entered on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**: Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of December 18, 2009, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

Michael C Abel, mca@dgdk.com (counsel for Debtors)
John J Bingham, jbingham@dgdk.com (counsel for Debtors)
Julia W Brand, jwb@dgdk.com (counsel for Debtors)
Jennifer L Braun, jennifer.l.braun@usdoj.gov (Office of the U.S. Trustee)
Martin J Brill, mjb@lnbrb.com (counsel for interested party)
Howard Camhi, hcamhi@ecjlaw.com (counsel for Kennedy Funding Inc.)
Ronald R Cohn, rcohn@horganrosen.com (counsel for Pacific Commerce Bank)
Michaeline H Correa, mcorrea@jonesday.com (counsel for MTA)
Brian L Davidoff, bdavidoff@rutterhobbs.com (counsel for Murakami)
Aaron De Leest, aed@dgdk.com (counsel for Debtors)
Michael G Fletcher, mfletcher@frandzel.com (counsel for Cathay Bank)
Donald L Gaffney, dgaffney@swlaw.com (counsel for Bank of America)
Thomas M Geher, tmg@jmbm.com (counsel for Capmark Finance Inc.)
Bernard R Given, bgiven@frandzel.com (counsel for Cathay Bank)
Barry S Glaser, bglaser@swjlaw.com (counsel for L.A. County)
John A Graham, jag@jmbm.com (counsel for Capmark Finance Inc.)
Ofer M Grossman, omglaw@gmail.com (counsel for Justman Packaging & Display)
Asa S Hami, ahami@sulmeyerlaw.com (counsel for Committee)
Brian T Harvey, bharvey@buchalter.com (counsel for California Bank & Trust)
William W Huckins   whuckins@allenmatkins.com, clynch@allenmatkins.com
Lance M. Jurich, ljurich@loeb.com (counsel for Canpartners)
Andrew F Kim, kim-a@blankrome.com (counsel for Imperial Bank)
Michael S Kogan, mkogan@ecjlaw.com (counsel for Kennedy Funding Inc.)
Tamar Kouyoumjian, tkouyoumjian@sulmeyerlaw.com (counsel for Committee)

-13-

| | |
|---|---|
| In re: MERUELO MADDUX PROPERTIES, INC. | CHAPTER 11 |
| Debtor(s). | CASE NUMBER 1:09-bk-13356-KT |

Duane Kumagai, dkumagai@rutterhobbs.com (counsel for Murakami)
David E Leta, dleta@swlaw.com (counsel for FNBN-CMLCON I LLC)
Katherine Lien    katie.lien@sbcglobal.net, katielien@gmail.com
Steven K Linkon, slinkon@rcolegal.com (counsel for Chinatrust Bank)
Richard Malatt, rmalatt@gmail.com (counsel for interested party)
Elmer D Martin, elmermartin@msn.com (counsel for United Commercial Bank)
Elissa Miller, emiller@sulmeyerlaw.com (counsel for Committee)
Iain A W Nasatir, inasatir@pszjlaw.com (counsel for East West Bank and Legendary)
Jennifer L Nassiri    jennifer.nassiri@dlapiper.com
Lawrence Peitzman, lpeitzman@pwkllp.com (counsel for interested party)
Eric S Pezold, epezold@swlaw.com (counsel for Bank of America)
Dean G Rallis Jr, drallis@sulmeyerlaw.com (counsel for Committee)
Michael H Raichelson, mhr@cabkattorney.com (counsel for Stanford Group)
Michael B Reynolds, mreynolds@swlaw.com (counsel for FNBN-CMLCON I LLC)
Martha E Romero, Romero@mromerolawfirm.com (counsel for San Bernardino County)
Victor A Sahn, vsahn@sulmeyerlaw.com (counsel for Committee)
Jeffrey S Shinbrot, shinbrot@earthlink.net (counsel for Rodriguez, et al.)
Stephen Shiu, sshiu@swlaw.com (counsel for FNBN-CMLCON I LLC)
Daniel H Slate, dslate@buchalter.com (counsel for California Bank & Trust)
Surjit P Soni, surj@sonilaw.com (counsel for Legendary)
James Stang, jstang@pszjlaw.com (counsel for East West Bank and Legendary)
John N Tedford, jtedford@dgdk.com (counsel for Debtors)
James A Timko    jtimko@allenmatkins.com
Alan G Tippie, atippie@sulmeyerlaw.com (counsel for Committee)
United States Trustee (SV), ustpregion16.wh.ecf@usdoj.gov
Jason L Weisberg, jason@gdclawyers.com (counsel for Roofcorp)
Jasmin Yang, jyang@swlaw.com (counsel for Bank of America)

☐Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail to the following person(s) and/or entity(ies) at the address(es) indicated below:

☐Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an Entered stamp, the party lodging the judgment or order will serve a complete copy bearing an Entered stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

☐Service information continued on attached page

-14-

347237.01 [XP]    25195

Exhibit 2

Page 26

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>MERUELO MADDUX PROPERTIES, INC. | Case Number:<br>1:09-bk-13356-KT |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>Wells Fargo Bank, N.A., successor by consolidation to Wells Fargo Bank Minnesota, National Association as Trustee for the Registered Certificateholders of GMAC Commercial Mortgage Securities, Inc., Mortgage Pass-Through Certificates, Series 2002-C1 acting by and through Capmark Finance Inc., Its Special Servicer ("Capmark") | ☐ Check this box to indicate that this claim amends a previously filed claim.<br><br>**Court Claim Number:** _____<br>*(If known)*<br><br>Filed on: _____ |
| Name and address where notices should be sent:<br>John A. Graham, Esq.<br>Jeffer, Mangels, Butler & Marmaro LLP<br>1900 Avenue of the Stars, 7th Floor<br>Los Angeles, CA 90067<br><br>Telephone number: (310) 203-8080 | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
| Name and address where payment should be sent (if different from above):<br><br><br>Telephone number: | ☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| **1. Amount of Claim as of Date Case Filed:** $1,443,668.40, plus additional sums in accordance with proof<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| **2. Basis for Claim:** Money Had and Received; Money Lent; Unjust Enrichment; Interference with Contract—see attachment.<br>(See instruction #2 on reverse side.) | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| **3. Last four digits of any number by which creditor identifies debtor:** _____<br>    **3a. Debtor may have scheduled account as:** _____<br>    (See instruction #3a on reverse side.) | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5). |
| **4. Secured Claim** (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☐ Other<br>**Describe:**<br><br>**Value of Property:**$ _____ **Annual Interest Rate** _____%<br><br>**Amount of arrearage and other charges as of time case filed included in secured claim,**<br><br>**if any:** $ _____ **Basis for perfection:** _____<br><br>**Amount of Secured Claim:** $ _____ **Amount Unsecured:** $ _____ | ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).<br><br>☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(_____). |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | **Amount entitled to priority:**<br><br>$ _____ |
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*<br><br>**See Meruelo Maddux Properties, L.P. Schedule of Intercompany receivables (Payables) attached hereto as Exhibit A (formerly marked Exhibit 8 in other proceedings).** | *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| | | |
|---|---|---|
| Date: 9/22/09 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>*John A. Graham*   John A. Graham, Attorney for Claimant | FOR COURT USE ONLY |

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 15*

6456955v1

Exhibit 3
Page 27

## ATTACHMENT TO PROOF OF CLAIM

### Money Had and Received

The Debtor is indebted to the claimant for money had and received by the Debtor and expended for the Debtor's benefit, which in equity and good conscience, should be returned or repaid to claimant because Debtor has no right to receive or retain said monies.

### Money Lent

Claimant states that the Debtor is indebted to claimant for money lent by claimant, which money was transferred, paid, expended or laid out for the benefit of Debtor such that it would be unfair and unjust for Debtor to retain said funds, and therefore, said funds are required to be repaid to claimant.

### Intentional Interference with Contract

Claimant previously filed a Proof of Claim, on July 20, 2009, in the bankruptcy proceeding of Santa Fe Commerce Center, Inc., that establishes claimant has valid contracts with Santa Fe Commerce Center, Inc., which contracts provided for current and future economic benefits to claimant. The Debtor had knowledge of the existence of these contracts and claimant's contractual relationship with Santa Fe Commerce Center, Inc. The Debtor engaged in intentional acts designed to induce a breach or disruption of the contractual relationship between claimant and Santa Fe Commerce Center, Inc. Debtor's conduct resulted in the actual disruption of the contractual obligations of Santa Fe Commerce Center, Inc. and resulted in the actual breach or disruption of the contractual relationship between claimant and Santa Fe Commerce Center, Inc. Said conduct by the Debtor has resulted in damage to Claimant in the amount stated in this proof of claim plus additional damages in accordance with proof.

### Unjust Enrichment

Debtor received all or a portion of the amounts stated in this claim and Debtor's retention of said benefits would be unjust or unconscionable.

Exhibit 3

Page 28

# EXHIBIT A

Exhibit 3

Page 29

Case 2:10-cv-00315-CAS-AJW   Document 41   Filed 06/28/10   Page 30 of 34   Page ID
#:225
Case 1:09-bk-13356-KT   Claim 42-1 Part 2   Filed 09/22/09   Desc Exhibit A and proof
of service   Page 2 of 6

# SCHEDULE OF INTER-COMPANY ACCOUNT BALANCES

# EXHIBIT 8

Exhibit 3

Page 30

Case 2:10-cv-00315-CAS-AJW   Document 41   Filed 06/28/10   Page 31 of 34   Page ID
Case 1:09-bk-13356-KT   Claim 42-1 Part 2   Filed 09/22/09   Desc Exhibit A and proof
of service   Page 3 of 6

# Meruelo Maddux Properties, L.P.
## Intercompany Receivables (Payables)
### As of February 28, 2009

| Entity | Intercompany Balance |
|---|---|
| 1825-0003 N/R - 2131 Humboldt St, LLC | $ 13,690,686.18 |
| 1825-0004 N/R - 1009 N Citrus Ave Covina | 6,620,668.84 |
| 1825-0005 N/R - 760 S Hill St LLC | 25,564,657.29 |
| 1825-0006 N/R - 1800 E Washington Blvd LLC | (1,084,116.43) |
| 1825-0007 N/R - 1919 Vineburn LLC | 3,076,919.52 |
| 1825-0009 N/R - 306 330 N Ave 21, LLC | 3,560,402.24 |
| 1825-0011 N/R - 3rd & Omar St, LLC | 3,399,221.87 |
| 1825-0012 N/R - 500 Mateo Street, LLC | 1,977,736.53 |
| 1825-0013 N/R - 2951 Lenwood Rd | 6,748,582.16 |
| 1825-0020 N/R - 12385 San Fernando Rd, LLC | 8,997,302.96 |
| 1825-0022 N/R - 2415 E Washington Blvd | 2,215,667.34 |
| 1825-0026 N/R - 915-949 Hill St, LLC | 17,777,053.05 |
| 1825-0027 N/R - 336 W 11th St, LLC | 10,555,943.96 |
| 1825-0028 N/R - 845 S Flower St, LLC | 73,847,179.40 |
| 1825-0029 N/R - 230 W Ave 26, LLC | 6,413,694.92 |
| 1825-0030 N/R - 1000 E Cesar Chavez LLC | 6,795,619.00 |
| 1825-0032 N/R - 3000 E Washington Blvd LLC | 8,828,877.32 |
| 1825-0036 N/R - 817-825 S Hill St, LLC | 16,389,038.79 |
| 1825-0038 N/R - 555 Central Ave, LLC | 1,991,974.91 |
| 1825-0039 N/R - Construction, Inc. | 9,788.12 |
| 1825-0040 N/R - Whittier Village, LLC | 3,011.38 |
| 1825-0041 N/R - MMP Ventures, LLC | 2,509.45 |
| 1825-0042 N/R - 2000 San Fernando Rd | (15,063,973.07) |
| 1825-0043 N/R - 420 Boyd St, LLC | 2,621,800.94 |
| 1825-0044 N/R - Lugo St, LLC | 29,862.45 |
| 1835-0001 N/R - Overland Terminal, LLC | 1,055,121.62 |
| 1835-0003 N/R - Merco Group, LLC | 14,827,658.10 |
| 1835-0004 N/R - 146 E Front St, LLC | 2,392,826.27 |

Case 2:10-cv-00315-CAS-AJW   Document 41   Filed 06/28/10   Page 32 of 34   Page ID
#:2255
Case 1:09-bk-13356-KT   Claim 42-1 Part 2   Filed 09/22/09   Desc Exhibit A and proof
of service   Page 4 of 6

# Meruelo Maddux Properties, L.P.
## Intercompany Receivables (Payables)
### As of February 28, 2009

| Entity | Intercompany Balance |
|---|---|
| 1835-0005 N/R - 2640 Washington Blvd, LLC | 3,940,469.92 |
| 1835-0006 N/R - 425 W 11th St LLC | 11,783,370.80 |
| 1835-0007 N/R - 9901 S Alameda, LLC | (6,756,636.24) |
| 1835-0008 N/R - MG South Park | 37,832,404.34 |
| 1835-0009 N/R - 620 Gladys Ave, LLC | 9,816,556.38 |
| 1835-0010 N/R - 801 E 7th St LLC | 200,744.11 |
| 1835-0011 N/R - 2001 2021 Mission Blvd | 40,988,682.23 |
| 1835-0012 N/R - Little J's | 8,327,391.91 |
| 1835-0014 N/R - 1211 E Washington Blvd,LLC | 9,138,606.95 |
| 1835-0015 N/R - 5707 Alameda, LLC | 4,852,403.78 |
| 1835-0016 N/R - Camfield Avenue, LLC | 2,183,167.90 |
| 1835-0017 N/R - 1500 Griffith Ave LLC | 5,542,011.54 |
| 1835-0018 N/R - Ceres St Produce LLC | 2,772,165.67 |
| 1835-0019 N/R - 1060 N Vignes LLC | 6,549,216.50 |
| 1835-0020 N/R - 2955 Leonis Blvd, LLC | (1,307,984.60) |
| 1835-0021 N/R - 3185 E Washington, LLC | 2,004,291.58 |
| 1835-0023 N/R - 4th Street Center, LLC | 6,818,866.59 |
| 1835-0024 N/R - 1225 E Washington Blvd, LLC | 452,595.98 |
| 1835-0025 N/R - 1308 S Orchard, LLC | 1,346,512.07 |
| 1835-0026 N/R - 2529 Santa Fe Ave, LLC | 3,768,697.41 |
| 1835-0027 N/R - 2040 Camfield Avenue, LLC | 5,163,684.83 |
| 1835-0028 N/R-5500 Flotilla Ave, LLC | 611,663.22 |
| 1835-0029 N/R- Mission Blvd, LLC | (8,073,370.01) |
| 1840-0002 N/R - Meruelo Balwin Park, LLC | 8,855,987.47 |
| 1840-0003 N/R - Meruelo Farms, LLC | 9,193,152.08 |
| 1840-0004 N/R - Wall Street Market LLC | 3,536,717.71 |
| 1840-0005 N/R - Meruelo Wall St Mart,LLC | 3,258,607.51 |
| 1840-0007 N/R - Meruelo Chinatown, LLC | 6,474,488.92 |

Case 2:10-cv-00315-CAS-AJW   Document 41   Filed 06/28/10   Page 33 of 34   Page ID
Case 1:09-bk-13356-KT   Claim 42-1 Part 2 #:2256 Filed 09/22/09   Desc Exhibit A and proof
of service   Page 5 of 6

# Meruelo Maddux Properties, L.P.
## Intercompany Receivables (Payables)
### As of February 28, 2009

| Entity | Intercompany Balance |
|---|---:|
| 1842-0000 N/R - APMI | (37,351,511.17) |
| 1842-0002 N/R - APMI 2 | 18,956,888.58 |
| 1843-0000 N/R - MMPI | (409,005,544.42) |
| 1844-0000 N/R - 905 E. 8th Street | 2,802,187.42 |
| 1845-0000 N/R - MMM, LLC | 4,585,567.07 |
| 1846-0000 N/R - 1828 Oak St, LLC | 1,196,102.78 |
| 1847-0000 N/R - 788 S Alameda, LLC | 1,559,540.18 |
| 1848-0000 N/R - Santa Fe & Washington | 4,901,794.42 |
| 1849-0000 N/R - Santa Fe Commerce | (1,443,668.40) |
| 1850-0000 N/R - MMCFF | 5,590,733.13 |
| 1850-0001 N/R - De La Rosa Partnership, LLC | 576.00 |
| 1851-0000 N/R - Alameda Parking, LLC | 61,786.68 |
| Total | $ (5,625,366.07) |

335602   25162

Exhibit  8

Exhibit 3

Page 33

## PROOF OF SERVICE

**STATE OF CALIFORNIA, CITY AND COUNTY OF LOS ANGELES**

I am employed in the City and County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  1900 Avenue of the Stars, 7th Floor, Los Angeles, California 90067.

On September 22, 2009, I served the document(s) described as **PROOF OF CLAIM** in this action by placing the true copies thereof enclosed in sealed envelopes addressed as follows:

John J. Tedford, IV, Esq.
Danning, Gill, Diamond & Kollitz, LLP
2029 Century Park East, Third Floor
Los Angeles, California 90067

☒   (BY MAIL) I am "readily familiar" with the firm's practice for collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐   (BY FAX) At          , I transmitted, pursuant to Rule 2.306, the above-described document by facsimile machine (which complied with Rule 2003(3)), to the above-listed fax number(s).  The transmission originated from facsimile phone number (310) 203-0567 and was reported as complete and without error.  The facsimile machine properly issued a transmission report, a copy of which is attached hereto.

Executed on September 22, 2009, at Los Angeles, California.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

/s/ Wilma Escalante
Wilma Escalante

Exhibit 3

Page 34